ELLEN M. SWAN, executrix, *vs.* THOMAS M. HAMMOND.

Middlesex. March 20. — October 23, 1884.

Under the Pub. Sts. *c.* 127, § 8, providing for the manner in which a will may be revoked, and that "nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator," the will of a feme sole is revoked by her subsequent marriage.

COLBURN, J. It appears by the record and agreed facts in this case, that Susan E. Haven, an unmarried woman, made her will, May 20, 1853; that she was then possessed of real and personal estate, all of which by her will she devised and bequeathed to her sister, who was named as executrix; that on October 3, 1861, she married Thomas F. Hammond, and lived with him until her death on January 18, 1883. Her husband had no knowledge of the existence of the will until after her decease. No child was born of the marriage. The will was presented for probate in Middlesex, by the executrix therein named, and was approved and allowed on April 3, 1883, and the husband appealed. The only question presented is whether the will was revoked by the marriage.

It has been well settled at common law, at least since *Forse & Hembling's* case, decided in 1589, 4 Rep. 60 *b*, that the marriage of a feme sole revokes her will. In case of a man it is equally well settled that marriage alone does not revoke his will, but that marriage and the birth of a child do. 1 Jarm: Wills, 122. *Warner* v. *Beach*, 4 Gray, 162.

The reason why the will of a feme sole is revoked by her marriage is commonly stated to be, that marriage takes away her testamentary capacity, and destroys the ambulatory nature of her will; and it is urged in argument, that, since the statutes allowing a married woman to make a will, with certain limitations as to the rights of the husband, were passed, the reason upon which the rule was founded, that the will of a feme sole is revoked by marriage no longer exists, and that her will, like that of a man, should be held to be revoked, not by marriage alone, but by marriage and the birth of a child. This argument is not without force, but its force would be much greater if we could see any good reason why in the case of a man both marriage and the birth of a child should be held necessary for the revocation of his will. The rule was adopted from the civil law, and is now firmly established as part of the common law; but the reason upon which it is founded is not obvious.

Marriage alone in the case of a man or woman would seem to be a sufficient change in condition and circumstances to cause an implied revocation of a will previously made. A will made before marriage, and taking effect after marriage, must take effect in a very different manner from that in the mind of the testator when the will was made. The rights of the husband or wife must greatly modify its provisions; and it can hardly be supposed that an unmarried person would make the same will he or she would make after marriage. If we were under no restraint, we might well hesitate to hold that, since testamentary capacity has been given to women, a will made by a woman when sole should be revoked only by marriage and the birth of a child, as in case of a man, for the sake of uniformity only, when we are inclined to think a better rule would be, that, in case of a man, his will should be revoked by marriage alone. But such a rule can only be introduced by the Legislature. In England, by the St. of 7 Will. IV. & 1 Vict. *c*. 26, § 18, and in

many of the States in this country, it has been provided by statute that the wills of both men and women shall be revoked by marriage. See collection of statutes in 1 Jarm. Wills (5th Am. ed. by Bigelow) 122, note.

But we are of opinion that the question now before us has been so far settled by statute as not to admit of change by construction. Section 8 of the Pub. Sts. *c.* 127, after providing that no will shall be revoked, unless by burning, tearing, &c., or some other writing executed in the manner required in the case of a will, goes on as follows : " but nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator." It is not apparent that an entire revocation by implication of law results from any change of condition or circumstances, except that of a subsequent marriage. See the discussion in *Warner* v. *Beach, ubi supra.* This clause as to implied revocations was first introduced in the Rev. Sts. *c.* 62, § 9. The other provisions as to revocation were substantially taken from the St. of 1783, *c.* 24, § 2. The Commissioners in their note to this section say, " The clause as to implied revocations recognizes and adopts the existing law, as established and understood among us." And their further discussion of this subject shows clearly that they had in mind the rule of the common law, that, in case of a man, marriage and the birth of a child, and, in case of a woman, marriage alone, revoked a will previously made.

We are of opinion that this provision as to implied revocations, from its language, and the reasons given for its introduction, has substantially the force of an express enactment of the rules of the common law, which we are not at liberty to change, even if the reason for the rule, in case of a woman, no longer exists. This was the view taken in *Brown* v. *Clark,* 77 N. Y. 369, upon a similar question, under a statute of New York.

We are therefore of opinion that the will of Susan E. Hammond was not properly admitted to probate.

*Decree of Probate Court reversed.*

*E. F. Dewing & G. L. Sleeper,* for the appellant.
*W. B. Gale & W. N. Mason,* for the executrix.