WILLIAM NUTT & others *vs.* WILLARD A. NORTON & another.

Middlesex. March 18. — July 2, 1886. W. ALLEN & HOLMES, JJ., absent.

A widow, with three children, whose only property was derived from her deceased husband, contemplating a second marriage, made a will, by which she bequeathed all her property received from her first husband to her three children. Her intended husband knew the contents of the will, and orally assented to its execution. The widow then married, and had a child by her second husband. *Held,* that the will was thereby revoked.

APPEAL from a decree of the Probate Court, disallowing the will of Lydia F. Wheeler, a petition for its allowance having been filed by William Nutt, as administrator with the will annexed. The case was heard by *Field,* J., and reported for the consideration of the full court, in substance as follows :

On March 7, 1883, the day of making the will, Lydia F. Wheeler was the widow of Joseph W. Wheeler and the mother of three children, then and now living, of whom said Joseph was

---

the father. Said Lydia and Willard A. Norton were married on March 8, 1883, and thereafter, until her death, lived together as husband and wife at Natick. Subsequently to such marriage they had a child, the issue of the marriage, who survived her. Said Lydia died within a few days after giving birth to such child, possessed of real and personal estate, which came to her from said Joseph W. Wheeler. At the time of making said will, and afterwards, she had no property other than what she had received, directly or indirectly, from him.

On March 7, 1883, said Lydia, accompanied by Norton, went into the office of Nutt, and told him that she wanted to make her will. Nutt then said to her that he thought she was going to be married, and she replied that she was going to be married the next day. She then instructed Nutt how to prepare her will, which he did while she and Norton remained there, and read it to her in the presence and hearing of Norton. By the will, she gave "my watch, clothing, and furniture" to her daughter, and the residue of her property " that I received from their father," in equal shares, to her three children. Norton was one of the subscribing witnesses to the will. Nutt remarked that the will rather cut off Norton. She said he understood it, and Norton said, " That is all right."

The judge found that the will was duly executed and published in the presence of the attesting witnesses, and that said Lydia was then of lawful age and of sound mind; ruled that the will was revoked by the subsequent marriage and the birth of issue; and affirmed the decree of the Probate Court.

*E. F. Dewing*, for the appellants. 1. The Pub. Sts. *c.* 127, § 8, after providing that no will shall be revoked "unless by the burning, tearing, cancelling, or obliterating of the same, with the intention of revoking it," provides that "nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator." Under this clause it is submitted that the party against whom an implication of law is invoked may rebut the facts in evidence from which the implication results.

The doctrine of revocation by implication of law is founded on the presumption that the testator would not have made the will in question, if he had contemplated, understood, and

appreciated the subsequent changes in his condition or circumstances.

The case of *Swan* v. *Hammond*, 138 Mass. 45, rests upon the principle here contended for. The facts from which the law implied an absolute revocation in that case were in no way rebutted. The testatrix there made her will in 1853, married in 1861, and died in 1883. " Her husband had no knowledge of the existence of the will until after her decease."

2. The facts from which it is contended that a revocation results in this case are rebutted. If Lydia Wheeler anticipated the changes in condition or circumstances her marriage would naturally occasion, and provided for it, then there is no revocation by implication of law. She was a widow with three children, and so prepared to anticipate the "changes in condition or circumstances" her anticipated marriage might naturally occasion. She disposed of the property that had come to her from her deceased husband by giving it to her children by him.

The will does not undertake to dispose of subsequently acquired property, and the inference is that she intended that property which had not come to her from her deceased husband, as well as subsequently acquired property, should be distributed under the general laws of distribution.

The language of the New York statute cited in *Swan* v. *Hammond*, *ubi supra*, and construed in *Brown* v. *Clark*, 77 N. Y. 369, is as follows: " A will executed by an unmarried woman shall be deemed revoked by her subsequent marriage." This statute makes an absolute rule of property, depending for its existence on the simple fact of marriage by a feme sole subsequently to the making of the will, which the court is bound to declare. Under the Massachusetts statute, the court is bound to inquire into the changes and circumstances affecting the testator subsequently to the making of his will, and then to determine, under the rules and forms of law, whether the testator, notwithstanding the changes in condition and circumstances, intended the will to take effect after marriage and death.

In the case at bar, it is evident that Lydia S. Wheeler made her will with the intention that it should take effect after her marriage and death; that she fully understood and appreciated the changes in circumstances and condition her marriage with

Willard A. Norton might naturally occasion, and provided for them in the will.

3. W. A. Norton, having witnessed the will with full knowledge of its contents, and assenting thereto at the execution of it, is estopped to deny its validity. *Child* v. *Sampson*, 117 Mass. 62. *Melley* v. *Casey*, 99 Mass. 241.

*C. Robinson, Jr.*, for the appellees.

MORTON, C. J. It was decided in *Swan* v. *Hammond*, 138 Mass. 45, that a will of a woman was revoked by her subsequent marriage. See also *Blodgett* v. *Moore*, 141 Mass. 75. In the case before us, after the will offered for probate was executed, the testatrix married, and had a child born of the marriage who survived her.

Upon these facts, a revocation of the will is implied by law, and this implication cannot be rebutted by parol evidence that the parties did not know the rule of law, or that they did not intend that the subsequent marriage and birth of a child should operate as a revocation. *Marston* v. *Roe*, 8 A. & E. 14.

The will does not make any provision for the husband or after-born children. The fact that the man the testatrix was about to marry witnessed the will, and the parol evidence that he knew its contents, are immaterial. Whether the act of the husband in witnessing the will could, by way of estoppel, prevent him from contesting the will, if he were the only party interested, as contended by the appellants, we need not discuss. It certainly cannot operate to give validity to the will as against the after-born child. Upon the facts of this case, therefore, we are of opinion that the will offered for probate was revoked by implication of law.        *Decree affirmed.*