[No. 1040.   September 13, 1904.]

In Re Estate of MENNA TEOPFER, Deceased; MARY TEOPFER, Appellant, v. HENRY KAEUFER, Appellee.

### SYLLABUS.

1. In this Territory wills may be revoked not only by a written instrument as provided in section 1953, Compiled Laws of 1897. but also in certain causes by operation of law.

2. The marriage of a testator, whether or not it is followed by the birth of a child, revokes an antenuptial will.

Appeal from the district court of Bernalillo county, before BENJAMIN S. BAKER, Associate Justice. Affirmed.

S. B. GILLETT for appellant.

Jurisdiction must be acquired in the manner prescribed by statute.

12 Ency. Pl. and Pr., 120, 125.

Jurisdiction of the person may be acquired by consent; but jurisdiction of the subject-matter of an action or other legal proceeding may not be acquired by consent or stipulation.

> 20 Ency. Pl. and Pr., 609: Bartel v. Hoey, 3 Col., 279; Molindin v. Colo. Central R. R. Co., Id. 174:

How an appeal must be taken from the probate to the district court:

> Laws of 1891, p. 158, sec. 40; Laws of New Mex.

The method required by the Legislature is exclusive, and courts cannot disregard it. A strict compliance is required.

> 2 Ency. Pl. and Pr., 16: State v. Newman, 24 Fla. 33.

When the conditions are not complied with, the appeal is void on objection of the appellee.

> Harway v. Biles, 1 Sneed & M. (Miss.) 657; Porter v. Gresham, 3 How. (Miss.) 75.

The stipulation to confer jurisdiction should have been set aside on the showing made by appellant herein; especially since the stipulation admitted what was not true.

> Richardson v. Musser, 54 Cal. 196: 20 Ency. Pl. and Pr., 662; Hunt v. Hollingsworth, 100 U. S. Co-op. 571; Howe v. Lawrence, 22 N. J. L. 104.

A will in New Mexico is not revoked by marriage.

> Sec. 1953, C. L. 1897; Hoitt v. Hoitt, 3 Atl. (N. H.) 604; Kelly v. Stephenson, 56 L. R. A. 754; Wards Will, 70 Wis. 251, 35 N. W. 731; Noyes v. Southworth, 55 Mich. 173, 54 Am. Rep. 359, 20 N. W. 891; Fellows v. Allen, 60 N. H. 439, 49 Am. Rep. 328; Emery Appellant, 81 Me. 275, 17 Atl. 68; Morton v. Onion, 45 Vt. 145: In re Tuller, 79, Ill., 99, 22 Am. Rep. 164; Webb v. Jones, 36 N. J. Eq.

163: See, also, Colcord v. Conroy, 4 Fla. 97, 23 So. 561; In re Last Will and Testament of Ward, 35 N. W. (Wis.) 731; Morey v. Sohier, 63 N. H. 507: In re Hunts Will, 17 Atl. 68; Sec. 9, Chap. 62, Acts 1901.

JOHN H. STINGLE for appellee.

Kaeuffer appealed from the judgment of the probate court in the manner provided by law.

Sec. 2014, Compiled Laws of 1897; Sec. 920, Compiled Laws 1897.

The manner of such appeals is provided in section 3136, Compiled Laws 1897, as amended by section 1, chapter 75, Laws 1899.

See, also, sec. 40, chap. 81, Laws 1901, p. 158; sec. 1983, C. L. 1897; Elliott, Appellate Proc., sec. 13.

The statutes of New Mexico recognize two methods of annulling the probate of a will; first by appeal and second by contest.

Compiled Laws of 1897, secs. 1977-1983, inclusive; Compiled Laws of 1897, secs. 1985-1991, inclusive; See, also, American Law of Administration, (Woerner), sec. 227.

The district court had jurisdiction.

Sec. 1977, Comp. Laws 1897, and secs. 1978-9; Buckingham's Appeal, 57 Conn. 544; Cheever v. Circuit Judge, 45 Mich. 6; 12 Ency. Pl. and Pr., 121; 12 Ency. Pl. and Pr., 129; Rowe v. Palmer, 29 Kas. 337; Crolot v. Maloy, 2 N. M. 198.

Informalities or irregularities may be waived by stipulation.

1 Ency. Pl. and Pr., 391; 20 Ency. Pl. and Pr., 662, 659-60.

Since the removal of disabilities of coverture, the will of a man and of a woman stand on the same footing.

Teopfer v. Kaeufer.

In re Fuller, 79 Ill. 99, 22 Am. Rep. 166; Noyes v. Southworth, 55 Mich. 173; Brown v. Sherrer, 5 Colo. App. 255, 38 Pac. 427.

In New Mexico, in the event of there being no children, the husband or the wife is the sole heir of the other.

Sec. 9, Chap. 62, Laws of 1901; sec. 2033, Comp. Laws N. M. 1897; Sec. 1994, Comp. Laws, 1897; sec. 1953, Comp. Laws 1897.

There are two kinds of revocation of wills; one by the act of the party; the other by operative of law.

Fallon v. Chidester, 46 Iowa 590. Beach, The Law of Wills, sec. 62; Garrett v. Dabney, 27 Miss. 333.

Legislation inclines to extend the rule of revocation.

Schouler on Wills (2 Ed.), sec. 424: See Collection of Statutes in Jarm. Wills (5 Am. Ed. by Bigelow), 122, note.

A will is revoked pro tanto to let in afterborn children.

1 Woerner, Administration (2 Ed.), sec. 55. 1 Jarman on Wills (Randolph & Talcott), p. 272, and notes; sec. 39, Chap. 81, Laws N. M. 1901.

A woman's will is revoked by her marriage.

Swan v. Hammond, 138 Mass. 45; Brown v. Clark, 77 N. Y. 369; Blodgett v. Moore, 141 Mass. 75; Will of Ward, 70 Wis. 251, 5 Am. St. Rep. 174, 35 N. W. 731.

Marriage and the birth of a child conjointly revoke a man's will, whether of real or personal estate.

1 Jarman on Will, p. 272-3; Schouler on Wills (2 Ed.), sec. 425-6; 1 Redfield, Law of Wills (3 Ed.) sec. 24, p. 278; Kent's Commentaries (13 Ed.), pp. 523, 524; Beach, the Law of Wills, sec. 63; 29 Am. and Eng. Ency. of Law, 321; Tiedeman, Real Property, sec. 888.

And this rule extends to illegitimate children and to adopted children.

> Milburn v. Milburn, 60 Iowa 411; Glasscot v. Bragg, 111 Wis. 605, 56 L. R. A. 258; Hilpire v. Claude, 109 Ia. 159, 46 L. R. A. 171, 80 N. W. 332.

As to the revocation of a will by inference of law:

> Schouler on Wills (2 Ed.), sec. 424; Roane v. Hollingshead, 17 L. R. A. 592.

In those jurisdictions where the husband and wife are heir to each other, marriage works such a change in the conditions and circumstances of the testator, as to revoke a will made prior to marriage.

> Tiedeman on Real Property, sec. 888; Tyler v. Tyler, 19 Ill. 151; Am. Board v. Nelson, 72 Ill; In re Fuller, 79 Ill. 99, 22 Am. Rep. 166; Morgan v. Ireland, 1 Idaho 786; Brown v. Scherrer, 5 Colo. App. 255, 38 Pac. 427; 21 Colo. 481; 42 Pac. 668; Colcord v. Conroy, 40 Fla. 97, 23 So. 561; Byrd v. Surles, 77 N. C. 425.

## STATEMENT OF THE CASE.

One Menna Teopfer, then an unmarried woman, made a will on the eleventh day of July, 1900, by which she devised all of her property to her sister Mary, and to the children of her said sister should such sister die before her. On April 8, 1901, she married Henry F. Kaeufer, and on June 13, 1902, she died, leaving surviving her husband. Deceased never had any children as the result of her marriage. Her property remained in her name at her death, and the will had never been revoked by any written instrument.

On September 2, 1902, the will was duly filed in the probate court of Bernalillo county, by the surviving husband, and at the same time he filed his petition asking that letters of administration be issued to him, on

the grounds that the marriage of Menna Teopfer to him, subsequent to the making of the will, revoked the will, and that, therefore, the deceased died intestate.

The application of the surviving husband was opposed by Mary Teopfer; the evidence of the subscribing witnesses to the will was taken by deposition, and was in substance that Menna Teopfer duly signed the will and that they affixed their names to the same as witnesses in her presence and in the presence of each other, and the judge of probate approved the will, from which Henry F. Kaeufer, appellee herein, prayed an appeal to the district court of the county of Bernalillo, which appeal was granted, bond was given, and the clerk of the probate court certified "a full, true and complete transcript of the proceedings and all matters relating to the estate of Menna Teopfer, deceased, now on record or on file," in his office, to the district court of the Second judicial district.

On February 6, 1903, a stipulation was filed in the district court, stating the facts on which the contest of the will should be submitted to the court. Issue of citations was waived, and Mary Teopfer and the minor heirs (her children) entered their appearance by their attorneys. The case came up for argument on the record and stipulation of facts, on February 6, 1903, and was continued to give the attorney for Mary Teopfer additional time in which to submit authorities to the court. On February 12, 1903, a motion was made to strike the stipulation from the files of the court, and set it aside, on the ground that it had been signed improvidently, which motion was denied. Motion was then made to strike out certain portion of the record, which was also overruled. On the same day motion to dismiss the appeal was also filed and overruled and on February 20, 1903, a final judgment was entered in said cause, decreeing that the will of Menna Teopfer was not "eligible to probate" and denying the probation thereof.

To this judgment the attorney for Mary Teopfer excepted, and appealed to this court.

## OPINION OF THE COURT.

MILLS, C. J.—Of the seven assignments of error only the sixth and seventh will need any considerable discussion by us, as the others can readily be disposed of.

The first and fifth assignments will be considered as one. The first alleges that the transcript of record from the probate court filed in the district court, contained no copy of the will of Menna Teopfer, and the fifth alleges that the court erred in declaring said will not "eligible to probate" because said will was not before the court.

Our examination of the transcript of record shows that the will was certified by the clerk of the probate court to the district court, a copy of the will is found on pages 10 and 11 of the transcript, and it is nowhere claimed that that is not an exact copy of the original on file in the probate court. The stipulation which is filed in this case shows what the will was, and admits that it was made and executed by the deceased, and that it was filed in the probate court of Bernalillo county. This stipulation or agreed statement of facts is neither the pleadings nor the issues; it is simply the proofs upon which the cause was tried by the district court. Territory v. Santa Fe Pac. R. R., 10 N. M. 415.

The second alleged error is that the appeal from the probate to the district court was not taken as required by law, and that the court should have sustained the motion to dismiss the appeal. Section 2014 of the Compiled Laws of 1897, providing for appeals from probate courts, was amended by section 40, chapter 81, Laws of 1901, but this amended section expressly provides that it "shall not affect any proceeding or proceedings now provided by law for the review in the dis-

trict court of any decision of any probate court upon the approval or disapproval of any last will or testament," consequently section 2014, Compiled Laws of 1897, is still in force so far as appeals in matters relative to the allowance or disallowance of the probate of a will is concerned, and that section provides that in all matters relative to wills any party aggrieved by the decision of the probate court shall have the right to appeal to the district court in the manner provided by law within three months, and section 929, Compiled Laws of 1897, provides that "appeals from the judgment of the probate court shall be allowed to the district court in the same manner and subject to the same restrictions as in case of appeals from the district court to the Supreme Court." This seems to have been done in this case for an appeal was prayed for and granted, bond was given, and the entire record was sent up and the whole matter was before the district court for a trial *de novo.* There was no error in overruling the motion to dismiss.

The third error assigned is that the court erred in refusing to strike out certain parts of the record in regard to the issuance of letters of administration to Henry F. Kaeufer, because that was no part of the record in the matter of the will of Menna Teopfer. We do not consider this point as well taken, nor do we see even if the learned judge below had allowed it, that it would have made any difference in the decision he arrived at in this case. In his petition opposing the allowance of the probate of the will the appellee herein asked that letters of administration be issued to him, but the probate court so far as appears from the record before us, never did issue letters of administration to Henry F. Kaeufer, but on the contrary approved the will and continued the application for the issuing of the letters of administration asked for, to which continuance the attorney for Kaeufer, then and there excepted. The district court never acted on the matter of the issuing these

letters of administration, as no appeal was taken from the action of the probate judge, nor could any have been taken as no final decision was made by the probate judge.

The next assignment is that the court committed error in refusing to set aside the stipulation between counsel.

There was no error in the refusal of the judge of the district court to set aside the stipulation of facts, on which stipulation the case was tried before him. The grounds set up in the motion asking the court to set aside the stipulation, are not in our opinion sufficient to have warranted the district court in so doing. After hearing the case argued and after having attentively listened to counsel, we are of the opinion that the stipulation very fairly states the facts of the case, and from an examination of the record and the facts as set out in the briefs of the attorneys who tried the case, we believe that the evidence, if it had been heard by the court would have proved substantially all of the facts as they are set out in the stipulation. The most that can be said is that possibly the attorney for the appellants acted hastily in signing the stipulation. If it had appeared that appellant had really been hurt by it, we believe that the trial judge would have set it aside, or have allowed other evidence to have been produced on the hearing before him.

The sixth and seventh assignments are really the important ones in this case, and are the ones on which appellant relies. They are that the court erred in deciding that marriage revokes a will in New Mexico, and that the decree of the trial court in declaring the will not eligible to probate is contrary to law.

These points raise a question which is entirely new in our jurisprudence, it never having been passed upon by the Supreme Court of this Territory, and we have therefore considered it with especial care, having carefully examined the authorities presented by the several

attorneys who argued the case before us, as well as many others which were not cited in their briefs.

It will be remembered that the deceased made her will on July 11, 1900; that on April, 1901, she married Henry F. Kaeufer, appellee herein, and that on June 13, 1902, she died leaving surviving her husband, but no children.

Appellant contends that because this territory has a statute concerning the revocation of wills; section 1953, Compiled Laws of 1897, which provides that a will may be revoked by a testator by an instrument in writing, executed and attested in the same manner as is required by law for the execution and attestation of a will, or by making a subsequent valid will, that a will can be revoked by no other means. If a person desires to revoke a will theretofore made, the revocation must be made in the manner set out in the statute, but it is idle to claim that they cannot also be revoked by operation of law. "There are two kinds of revocations of wills, one by the act of the party, and the other by operation of law. This section (referring to the Iowa Statute) prescribes the manner of revocation of the first character. Wills that have never been revoked by the testator may not be enforced by the law; that is, they will be treated as revoked." Fallon v. Chidester, 46 Iowa 590; Beach on the Law of Wills, sec. 62; Garrett v. Dabney, 27 Miss. 333. The point that a will may be revoked by the operation of law, is too well settled by the authorities and text-books, to need any further citation of authorities.

It is well settled at common law that the marriage of a *feme sole* revoked her will. Forse and Humblings case, 4 Rep. —. In the case of a man it was equally well settled that marriage alone did not revoke his will, but that marriage and birth of a child did.

1 Jarman on Wills, 122; Warner v. Beach, 4 Gray 162. The reason why the common law held that the will of a *feme sole* was revoked by her marriage, was that

marriage took away her testamentary capacity and the ambulatory character of her antenuptial will.    The reason for this common-law rule is ably discussed in Browne v. Sherrer, 5 Colo. App. 255, 38 Pac. 427.

The common-law rule has been changed by statute in most of the States of the Union, so that married persons can now dispose of their property by will, subject only to such limitations as the statutes of the several States impose.

By our laws, section 9, chapter 62, Laws of 1901, and section 2033, and 1994, Compiled Laws of 1897, if a husband or wife die, leaving no will and no children, the survivor shall inherit all of the property of the deceased; and by section 7, chapter 62, Laws of 1901, all disabilities of coverture are removed and the wills of both men and women stand on exactly the same footing.

The laws of this Territory also provide, that a will made during coverture is revoked *pro tanto* to let in children born after it was executed.    Section 39, chapter 81, Laws of 1901, and the reason of this is that a new heir has come into existence since the will was executed.

All of the States, so far as we have been able to discover, which hold that the marriage of a woman does not set aside a will made before such marriage, make such holding on the ground that the law amply provides for the survivor; but in those jurisdictions where the husband and wife are heir to each other, in the event of no children being born, the rule is generally held to be that marriage works such a change in the condition and circumstances of the testator as to revoke a will made prior to such marriage.    It is presumed that the intent of the testator was that such a will should not take effect upon the happening of such a contingency.    We do not think that the mere marriage of a woman would set aside her will, but it is the coming of a new heir, for under the laws of this Territory, by marriage not only

does a man or woman get a wife or husband, but also an heir.

We think that under the laws of this Territory by which the surviving spouse is the heir to the other in the event of no children being born of the marriage and no valid will being made during coverture, that the common law is so altered that on marriage the antenuptial will of a husband would be set aside as well as that of his wife, and that both of them are now on the same footing. Marriage, and the coming in of an heir to all the property works such a natural change in the testator's condition that it is not to be expected that the devise was made in view of such changed conditions.

The Supreme Court of Colorado says: "Under the English statute of primogeniture, the lands went to the male heirs in absolute succession, and ordinarily without power on the part of the devisor to change the rule of succession. It is thus apparent that, in the acceptance of this rule of the ecclesiastical law, the English common-law judges went to the limit essential to the absolute adoption of the principle. In other words, they certainly decided that, whenever an heir who could inherit land sprung into being, it should be held to revoke the will, since it was not to be presumed that the will was executed in the contemplation of such changed condition. This broad basis seems not to have been always considered by the American courts when they have attempted to restate and reapply existing law to new and novel conditions. In the conclusion at which we arrive, we are not, however, without the support of cases in this country. Garrett v. Dabney, 27 Miss. 335; Tyler v. Tyler, 19 Ill. 151; Morgan v. Ireland, 1 Idaho 786; *vide,* Tied. Real Prop., par. 888; Swan v. Hammond, 138 Mass. 45."

The law of Colorado is very similar to ours in that it provides that when a person dies intestate, without children, but leaving either husband or wife, that the surviving spouse shall inherit the entire property. They

also confer upon married women the right to make wills bequeathing their property, and that State holds that a wife by law is the absolute heir of the husband's estate, so that she is put into precisely the same position that the male heir occupied under the English law of primogeniture, with reference to the inheritance of lands, with the exeception that while the English heir took all of the lands devised, in Colorado, the wife holds this position only with reference to half of the estate.

Our laws place husband and wife on the same footing as the laws of Colorado. Both are heirs to each other in the event that they leave no children, or will, made during coverture, and even if the deceased leaves a will, such will can only dispose of one-half of the acquest or community property.

"The English law rests on the firm foundation that the birth of an heir who can inherit lands shall be held operative to destroy a will, because it is not to be conceived that the testator has devised his estate in view of such an extraordinary alteration in his condition. The same principle and the same rule can be urged with like force in our own legislation as stated by the English cases, and those which have followed the law which they announce; it is a strained conception to assume that a man who has made a will while unmarried has made it in contemplation of his assumption of the marriage relation. There is no force in the suggestion that, because a woman becomes an heir by virtue of the statute, she does not come within the beneficient provisions of the rule as declared at the common law. It was by the law only that the male heir succeeded to the testator's lands, and took his inheritance." Brown v. Seherrer, 33 Pac. 429.

It seems to us that in this Territory this reasoning is equally applicable, whether the surviving spouse be a man or woman. By the marriage not only a husband or wife, but a new heir capable of inheriting all of the property comes into existence, and in accordance with

what we think is the spirit and reasoning of the doctrine and the purpose and meaning of our laws, we hold that the marriage of a testator, whether or not it be followed by the birth of an heir, is operative to revoke any antenuptial will.

There being no error in the judgment given by the court below, the same is therefore affirmed.

Parker, McFie, and Pope, JJ., concur.

Baker, A. J., having tried this case below, and Mann, A. J., not having heard the argument, did not participate in this decision.