ROSLYN S. HERTRAIS *vs.* GEOFFREY DOANE MOORE & another.

Hampden.    September 21, 1949. — November 30, 1949.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & COUNIHAN, JJ.

*Will*, Revocation.    *Statute*, Construction.

A divorce and remarriage of the divorced woman were not, within G. L. (Ter. Ed.) c. 191, § 8, "subsequent changes in the condition or circumstances of" the divorced man "from which a revocation" of his will, made prior to the divorce and naming her as sole beneficiary, was "implied by law."

Discussion by WILKINS, J., of the history and scope of the final clause of G. L. (Ter. Ed.) c. 191, § 8, and of § 9.

It is to be presumed that upon reënacting a statute without material change the Legislature adopts a previous judicial construction thereof.

PETITION, filed in the Probate Court for the county of Hampden on August 31, 1948.

The case was heard by *Stapleton, J.*

In this court the case was submitted on briefs.

*B. Potter*, for the petitioner.

*C. V. D. Siegel*, for guardian ad litem.

WILKINS, J.  This petition by Roslyn S. Hertrais, form-
erly Roslyn S. Moore, is for the probate of an instrument
executed May 5, 1943, as the will of her former husband,
Robert D. Moore, whose only heirs at law and next of kin
are their two minor sons, Geoffrey D. Moore and Frank L.
Moore, 2d.  A guardian ad litem was appointed to repre-
sent the interest of the minors.  The case was heard on
agreed facts, and the petitioner appealed from a decree
disallowing the will.  The decree recited that the sole
beneficiary under the instrument is the petitioner, who at
the time of its execution was the wife of Robert D. Moore;
that on December 10, 1946, a decree nisi for divorce was
entered on her libel against him; that the divorce decree
became absolute on June 10, 1947; that "there was a
property settlement agreed upon" between them at the
time of the divorce; that on July 7, 1948, she married
Wesson S. Hertrais; and that on July 23, 1948, Robert D.
Moore died.  Two of the agreed facts are that the will was
properly executed, and that on the date of execution Robert
D. Moore was of testamentary capacity.  Thus, it would
seem that the will was disallowed, as the parties assume in
this court, on the ground that it had been revoked "by
subsequent changes in the condition or circumstances of
the testator from which a revocation is implied by law."
G. L. (Ter. Ed.) c. 191, § 8.[1]

This statute in substance has long been part of our law.
Rev. Sts. c. 62, § 9.  Gen. Sts. c. 92, § 11.  Pub. Sts. c. 127,
§ 8.  R. L. c. 135, § 8.  The reference to implied revocation
was first introduced by Rev. Sts. c. 62, § 9,[2] in the words,

---

[1] This section in its entirety reads: "No will shall be revoked except by
burning, tearing, cancelling or obliterating it with the intention of revoking it,
by the testator himself or by a person in his presence and by his direction;
or by some other writing signed, attested and subscribed in the same manner
as a will; or by subsequent changes in the condition or circumstances of the
testator from which a revocation is implied by law."

[2] This section in its entirety read: "No will shall be revoked, unless by
burning, tearing, cancelling or obliterating the same, with the intention of
revoking it, by the testator himself, or by some person in his presence and by
his direction; or by some other will or codicil in writing, executed as pre-

"excepting only, that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator." The other provisions as to revocation were substantially taken from St. 1783, c. 24, § 2. It is of value to examine the report of commissioners appointed to revise the general statutes (1834). See *Wine* v. *Commonwealth*, 301 Mass. 451, 455. Part II of the report contains the following (page 26): "The clause as to implied revocations, recognizes and adopts the existing law, as established and understood among us;[1] but as the words of the statute are so strong and explicit, and this exception is so important, it may be thought best to express it. The New York code proceeds to define the cases in which such a revocation will be implied; to wit, if the testator be a man, his subsequent marriage and the birth of a child; and if a woman, her subsequent marriage, although there be no issue of the marriage. But the commissioners have thought it better, and more consistent with the terms of their commission, in this and in all similar cases, to avoid enacting or repeating in the proposed code any of the rules or principles of the common law, unless when it is required for the explanation of some enactment, or for other weighty reason."

In *Swan* v. *Hammond*, 138 Mass. 45, it was held that under § 8, then in the form of Pub. Sts. c. 127, § 8, the will of a feme sole was revoked by her subsequent marriage, as at common law, although the usually stated reason for the rule, that marriage took away her testamentary capacity and destroyed the ambulatory nature of her will, no longer applied after the passage of statutes allowing her to make a will. In rejecting a contention that the rule should be the same as in the case of a man, namely, marriage and the birth of a child, the court observed (page 46) that it

---

scribed in this chapter; or by some other writing signed, attested and subscribed, in the manner provided, in this chapter, for the making of a will; excepting only, that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator."

[1] See cases collected in Page on Wills (3d ed.) §§ 515, 516.

could see no good reason why anything more than marriage should be necessary to revoke a will of either a man or a woman, but that that was a matter for the Legislature. After quoting the statute as to implied revocation, it was said (page 47), "It is not apparent that an entire revocation by implication of law results from any change of condition or circumstances, except that of a subsequent marriage," citing *Warner* v. *Beach*, 4 Gray, 162. Next quoting from the report of the commissioners, *supra*, the court concluded (page 47): "And their further discussion of this subject shows clearly that they had in mind the rule of the common law, that, in case of a man, marriage and the birth of a child, and, in case of a woman, marriage alone, revoked a will previously made. We are of opinion that this provision as to implied revocations, from its language, and the reasons given for its introduction, has substantially the force of an express enactment of the rules of the common law, which we are not at liberty to change, even if the reason for the rule, in case of a woman, no longer exists." The case was followed in *Blodgett* v. *Moore*, 141 Mass. 75, and *Nutt* v. *Norton*, 142 Mass. 242.

In *Warner* v. *Beach*, 4 Gray, 162, it was held that revocation of a will could not be implied from the birth to the testator of a child contemplated in the will, from the deaths of the testator's wife and one of his children, from the testator's insanity for more than forty years from soon after making his will until his death, and from a large increase in the value of his real estate, which greatly changed the proportion between the specific legacies given to some children and the shares of other children made residuary legatees. It was said by the court, speaking through Shaw, C.J. (page 163): "But an entire revocation by implication of law is limited to a very small number of cases." The only examples referred to were the marriage of a feme sole and marriage and the birth of a child in the case of a man.

In *Bennett* v. *Brown*, 222 Mass. 283, it was held, on the authority of *Warner* v. *Beach*, that the death of the wife

during the lifetime of her husband is not such a change in condition or circumstances as to revoke his will by implication of law.

In *Meyerovitz* v. *Jacobovitz*, 263 Mass. 47, 50, it was said of the implied revocation clause, "Revocation of that nature is limited to a very small number of cases at common law, as for example subsequent marriage and birth of children without provision in the will to cover such events."

The foregoing are all the cases relating to the present question that have been decided in this Commonwealth. It is not without significance that among them there is not one dealing with the contention that a revocation of a will may be implied in law from the divorce of a testator, whether with or without a property settlement, and whether or not followed by the remarriage of his divorced spouse. Having in mind the background and origin of G. L. (Ter. Ed.) c. 191, § 8, we are of opinion that the subsequent changes referred to are confined to the two mentioned by the commissioners in 1834, namely, the marriage of a woman and the marriage of a man and the birth of a child. Such, indeed, was the stated basis of the decision in *Swan* v. *Hammond*, 138 Mass. 45, 47. The Legislature has twice reënacted the statute since that decision. "It is a well settled rule of statutory interpretation that, when a statute after having been construed by the courts is reënacted without material change, the Legislature are presumed to have adopted the judicial construction put upon it." *Nichols* v. *Vaughan*, 217 Mass. 548, 551. *Kelly* v. *Morrison*, 231 Mass. 574, 577. *Dolan* v. *Commonwealth*, 304 Mass. 325, 332–333.

We realize the effect on § 8, as we have construed it, of the passage of St. 1892, c. 118, now found in G. L. (Ter. Ed.) c. 191, § 9, and now reading: "The marriage of a person shall act as a revocation of a will made by him previous to such marriage, unless it appears from the will that it was made in contemplation thereof. . . ." This statute appears to have been prompted by the statements in *Swan* v. *Hammond*, 138 Mass. 45, 46, *supra*, and clearly covers

the same field as does the implied revocation clause in § 8
as limited in that case and in the present opinion. In plac-
ing a man and a woman for the first time in this Common-
wealth upon a uniform basis as to the revocation of a will
by subsequent marriage, § 9 made a new and useful addition
to our legislation. It has been given full scope. *Sughrue*
v. *Barlow,* 233 Mass. 468. For the reasons stated, its pas-
sage necessarily effected by inconsistency an implied repeal
of the final clause of what is now G. L. (Ter. Ed.) c. 191,
§ 8, relating to a revocation implied in law in so far as it
applied to the will of a man, and it thus limited that clause
so that thereafter it continued to provide solely for such
revocation in the event of the subsequent marriage of a
woman. Consequently, § 8 covers no case of revocation
by implication not now expressly covered by § 9, which is
the statute of broader scope.

We need not consider the varying statutes and the divi-
sion of opinion among the decisions of other States dealing
with divorce accompanied by a property settlement as a
revocation. See Page on Wills (3d ed.) § 522; Thompson
on Wills (3d ed.) § 176; 25 A. L. R. 49; 37 A. L. R. 312;
42 A. L. R. 1289; 24 Ky. L. J. 1. Nor do we reach the
point whether the conclusion of the court below that there
was a property settlement is a proper inference from the
agreed facts.

The result we attain, which is compelled, we think, by
our statutes and our decisions, seems to us to be the desira-
ble one. It would be a serious matter to invalidate a will
because of a supposed change in intention on the part of a
testator not given formal expression by him. Our con-
clusion avoids the difficulties faced in those jurisdictions
where the statutes permit the adoption of a contrary view,
where the revocation is not presumptive but absolute, and
evidence, not amounting to a republication, cannot be re-
ceived of a testator's actual intent to continue his will in
force, and where the prevailing standard seems to be what
a reasonable testator would be deemed to have intended.
See *Wirth* v. *Wirth,* 149 Mich. 687; *In re McGraw's Estate,*

233 Mich. 440, reversing *S. C.* 228 Mich. 1; *Donaldson* v. *Hall,* 106 Minn. 502, 505; *In re Estate of Martin,* 109 Neb. 289, 294; *Will of Battis,* 143 Wis. 234, 240–241. If the changes relied upon by the respondents were held to achieve a revocation implied in law, other changes can be imagined which with equal plausibility might be urged to have similar effect. Persons who have drawn wills or who are to draw wills are not now to be exposed to the risk that, in the present circumstances and perhaps others, the courts might decree revocation notwithstanding that such persons do not avail themselves of the easy means afforded by statute for accomplishing revocation by their own intentional acts.

*Decree reversed.*