Zimmerman, J.
On their appeal to this court the appellants rely principally on two propositions.
1. By the terms of the property settlement between Ada DeVinney Caldwell and C. L. Caldwell, Jr., under date of September 3, 1948, the second codicil to the will, bequeathing and devising C. L. Caldwell, Jr., the entire estate, was expressly revoked.
2. If the above contention is rejected, the property settlement of September 3, 1948, followed by the decree of divorce, constituted an implied revocation by operation of law of the codicil to the will in favor of C. L. Caldwell, Jr., under the latter part of Section 10504-47, General Code.
That section, which has been a part of the statutory law of Ohio substantially in its present form since 1840 (38 Ohio Laws, 125), reads in its entirety as follows :
“A will shall be revoked by the testator tearing, canceling, obliterating or destroying it with the intention of revoking it, by the testator himself, or by some person in his presence, or by his express written direction, or by some other will or codicil, in writing, executed as prescribed by this title, or by some other writing, signed, attested and subscribed, in the manner provided by this title for the making of a will, but nothing herein contained shall prevent the revocation implied by law, from subsequent changes in the condition or circumstances of the testator.”
As to appellants’ first contention we find no language in the property settlement agreement between the parties which can fairly be construed as expressly revoking the gift to C. L. Caldwell, Jr., as contained in the second codicil to the will, executed prior to the marriage of the parties. The settlement agreement made no mention of testamentary dispositions of property and did not clearly indicate that such dispositions were in the minds of the parties.
*201 Appellants’ second contention is more troublesome. In Thompson on Wills (3 Ed.), 277, Section 176, the following language appears:
“The rule is well settled that a divorce alone does not revoke a previously-executed will. Thus a divorce by the legatee does not expressly or impliedly revoke a testamentary provision made in the testator’s will. However, it seems to be a well established rule, and one which is in accord with reason and justice, that a divorce, coupled with a settlement of the property rights of the parties, is such a change of circumstances as to work an implied revocation. But where the statute expressly provides the specific manner in which revocation may be had, and does not contain a general provision for revocation by implication, divorce does not revoke the will even when coupled with a settlement.” Compare 1 Page on Wills (3 Ed.p 958, Section 522.
The case of Charlton v. Miller, supra (27 Ohio St., 298, 22 Am. Rep., 307), held that the divorce of a testator from his wife after the making of his will in her favor does not revoke the will. But in that case no property settlement between the parties appears to have been involved.
In a number of the states which have statutory enactments similar to our Section 10504-47, General Code, and which statutes provide that there may be an implied revocation of a will by subsequent changes in the conditions and circumstances of the testator, the courts have held that divorce coupled with a property settlement impliedly revokes as a matter of law a will previously made in favor of the surviving spouse, and that evidence, not showing a republication, is inadmissible to prove that the testator’s intent was otherwise. The presumption of revocation is made conclusive on the theory that after a property settlement and divorce the only logical deduction is that the *202 testator, reacting in a normal manner, intended to revoke his will in favor of his divorced sponse. The Supreme Courts of Michigan, Minnesota, Nebraska, Wisconsin and Wyoming have taken this position, and the cases from those states so holding are collected in the comprehensive annotation appearing in 18 A. L. R. (2d), beginning at page 697.
Other courts have arrived at a diametrically opposite view, notably Massachusetts. In the recent case of Hertrais v. Moore, 325 Mass., 57, 88 N. E. (2d), 909, involving a divorce and property settlement, it was held, under a Massachusetts statute enumerating specific methods of revoking a will and providing that “nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the conditions and circumstances of the testator,” that a divorce obtained by a wife and her remarriage did not revoke by implication of law a will made in her favor by her former husband before the divorce. Near the close of its opinion the Supreme Judicial Court of Massachusetts remarked:
‘ ‘ The result we attain, which is compelled, we think, by our statutes and our decisions, seems to us to be the desirable one. It would be a serious matter to invalidate a will because of a supposed change in intention on the part of a testator not given formal expression by him. Our conclusion avoids the difficulties faced in those jurisdictions where the statutes permit the adoption of a contrary view, where the revocation is not presumptive but absolute, and evidence, not amounting to a republication, cannot be received of a testator’s actual intent to continue his will in force, and where the prevailing standard seems to be what a reasonable testator would be deemed to have intended. * * * If the changes relied upon by the respondents were held to achieve a revocation implied *203 in law, other changes can be imagined which with equal •plausibility might be urged to have similar effect. Persons who have drawn wills or who are to draw wills are not now to be exposed to the risk that, in the present circumstances and perhaps others, the courts might decree revocation notwithstanding that such persons do not avail themselves of the easy means afforded by statute for accomplishing revocation by their own intentional acts. ’ ’
Among the other cases leaning toward the Massachusetts view are In re Estate of Brown, 139 Iowa, 219, 117 N. W., 260, and In re Estate of Arnold, 60 Nev., 376, 110 P. (2d), 204.
In those cases we have examined, which hold, under statutes resembling Section 10504-47, General Code, that if a divorce is preceded by or coupled with a property settlement the testator, reacting as an average individual, must be presumed to have intended to eliminate his former spouse from his previously executed will and that such presumption of implied revocation is conclusive as a matter of law, the particular wills in issue were executed during coverture — at a time when reciprocal rights and obligations existed between the parties and when the ties of mutual affection and esteem incident to marriage would naturally induce the making of favorable wills.
Assuming that those cases were correctly decided on their facts, here we face a situation where Ada De-Vinney executed the second codicil to her will, leaving her property to Caldwell, Jr., a considerable length of time before their marriage, and other factors unrelated to matrimony may have motivated such disposition of her property. Moreover, Ada DeVinney lived for about five months after the property settlement and divorce, and during that time she did not destroy her will and codicils previously made or execute a new will disposing of her property in a different manner. She *204 was an unmarried woman when she executed the second codicil to her will and died an unmarried woman without having altered it in any way. In such a setting it seems to us that the intention of testatrix to revoke the testamentary disposition of her property previously made is not so plainly exhibited as to warrant the conclusion that there was an implied revocation as a matter of law. The language of this court in Charlton v. Miller, supra, would lend validity to such viewpoint. See the article entitled “Revocation of Wills by Subsequent Changes in the Condition or Circumstances of the Testator” by Elizabeth Durfee in 40 Michigan Law Review, 406.
It would seem plain that the Court of Appeals, upon a consideration of all the facts and circumstances relating to this cause, reached the conclusion that they were legally insufficient to constitute a revocation of the codicil in favor of Caldwell, Jr. In the appellate court’s opinion the following statement occurs:
“* * * by reason of the fact that the testator and Caldwell were not married at the time the second codicil to the will was executed, and the bequest and devise to Caldwell, and his appointment as administrator [executor] are made in absolute and unconditional terms, not in any way conditioned upon marriage, that said provisions of said codicil are not attributable to their subsequent marriage, and that notwithstanding the testator and Caldwell entered into an agreement settling their property rights, which was incident to the divorce action pending between them, and was followed by divorce decree, the second codicil of testator’s will was not revoked by implication of law.”
However, the Court of Appeals was wrong in entering final Judgment. The will contest action is still pending and it is for the trier of the facts to determine whether the purported will and codicils of Ada De-Vinney are in truth her last will. In the trial of such *205 action the contesters might wish to present evidence pertaining to the subjects of mental capacity and undue influence.
The judgment of the Court of Appeals is, therefore, affirmed as to the determination of the precise question before that court, namely, whether the second codicil to Ada DeVinney’s will in favor of Caldwell, Jr., was revoked by the property settlement and divorce. However, the rendition of final judgment was-erroneous, and, consequently, the cause is remanded to the Court of Common Pleas for further proceedings.

Judgment accordingly.

Weygandt, C. J., Stewart, Middleton, Tapt,, Matthias and Hart, JJ., concur.