Taft, J.,
dissenting. In my opinion, the decision in the instant case is inconsistent with the unanimous decision rendered by this court about two years ago in Codner v. Caldwell, 156 Ohio St., 197, 101 N. E. (2d), 901; it is inconsistent with the unanimous decision rendered 78 years ago in Charlton v. Miller, Admr., 27 Ohio St., 298, 22 Am. Rep., 307; it ignores the provisions of Section 10504-51, General Code; and it imparts to the language used by the General Assembly in Section 10504-47, General Code, a meaning which the General Assembly never intended or could even have anticipated.
In the Codner case, as in the instant case, there was a divorce decree coupled with a property settlement. In that case, however, there was much more reason for a court to imply a revocation notwithstanding the failure of the maker of the testamentary document to do something about revoking it. The testamentary document in that case had been made almost ten years before any effort was made to secure a divorce and even about a year before the marriage which was the subject of the divorce. Those facts and circumstances would have justified giving greater weight to the contention that the divorce and property settlement resulted in an implied revocation of that document than do the facts and circumstances in the instant case. The maker of the testamentary document in that case may well have forgotten that she made it almost ten years before and even a year before her marriage. The maker of the will in the instant case would obviously have been much less likely to have forgotten the will which he made only about a year and a half prior to his divorce and only five months prior to the time his wife instituted alimony proceedings against him.
The only reason suggested as to why the Codner case *419 did not require in the instant ease the same decision that was rendered in the Codner case is that the testamentary document in the Codner case was made before the marriage involved instead of after that marriage. Notwithstanding the suggestion in the majority opinion that such a distinction has been recognized by the authorities, a reading of the authorities cited will not disclose that any of them, except the Codner case, has even suggested the possibility of such a distinction. It would seem apparent that, where a marriage, a divorce and a property settlement have intervened between the making of a will and the death of its maker, there has been a greater change in the condition and circumstances of the maker than in a case where only a divorce and property settlement have intervened between those two events.
The suggested distinction might be advanced as a reason for supporting an implied revocation in a case such as the Codner case notwithstanding a holding that there could be no such revocation in a case such as this. It certainly furnishes no reason at all for holding that there can be an implied revocation in a case such as this if there cannot be in a case such as the Codner case. It would be more reasonable to apply a different rule of law in the instant case from that applied in the Codner case merely because the Codner case involved a codicil to a will made by a woman instead of, as in the instant case, a will made by a man.
In the syllabus in the Codner case it is stated as a fact that the testamentary document there involved “contained no mention of a prospective marital relationship * * * as the motivation” therefor, and in the opinion it is stated that “other factors unrelated to matrimony may have motivated such disposition of her property.” However, in the opinion in Charlton v. Miller, supra, the language of which is referred to with approval in the Codner opinion, it is indicated *420 that a mention of such prospective marital relationship is of no significance in determining whether there is an implied revocation. Thus, on page 304, in the opinion by Day, J., in the Charlton case, it is said:
“Undoubtedly, the contemplated marriage of the parties, and a desire to make a provision for the plaintiff as his wife, were prompting causes of the will; but whether these were the only motives of the testator we cannot tell. If so, he might easily have made the bequest upon the conditions that the legatee became his wife and survived him as his widow; but he chose to leave these conditions, if contemplated by him at all, to be inferred only by the words of description that he gave to his legatee as being his ‘wife’ or ‘intended wife.’ The bequest is made in absolute and unconditional terms, so far as expressed in the language of the will, and cannot be evaded or overcome by mere argumentative inferences drawn from words of the will not used for any such purpose. * * * the legacy is not conditioned upon her survivorship as his widow. ’ ’
Even in the instant case, it might properly be stated that “other factors unrelated to matrimony may have motivated” the disposition of property provided for in the will involved. However, they probably did not. Likewise, in the Coclner case they probably did not. It is a fact in that case that within a year and 15 days the maker of the testamentary document there involved did marry the party for whom she had provided in that document; and it is a fact that during the nine years after her marriage and before her divorce she did nothing to change that testamentary document. Can it reasonably be said that the execution of that testamentary document, providing for her future husband, a year before her marriage to him and the continuation of that testamentary document, as part of her last will during the nine years of her married life, *421 are less of an indication that factors related to matrimony motivated the disposition of property provided for therein than was the execution of the will in the instant case during the marriage relationship and its existence for only one and one-half years before the divorce?
Both the syllabus and the opinion in the Codner case emphasize the fact that, during the five months of her life after the divorce and property settlement, the maker of the testamentary document there involved did nothing to change or revoke it. In the instant case, the maker of the will did nothing to revoke or change it during the 12 and one-half years that intervened between the divorce and his death. See also Charlton v. Miller, supra, 305.
The majority opinion attempts to distinguish Charlton v. Miller, supra, on two grounds, (1) that the will there involved was executed prior to the marriage and (2) that there was in that case no property settlement incident to the divorce decree.
However, a consideration of the facts of that case make it apparent that the execution of the will there involved was motivated by the marriage relationship at least as much if not more than was the will in the instant case. Thus, from the report of the case (page 299) it appears that “on the same day, after making the will, they were married,” i. e., the maker of the will and the one for whom he had provided in the will. Furthermore, the will there read in part: “I give and bequeath to my intended wife”; and further language therein was: “but if any child or children should be born to me of my intended wife * * * subsequent to my marriage to her,” and “the child or children born to me of Elizabeth Jennings after my marriage to her.” Certainly, the mere fact that the will in the Charlton case was actually made a few hours before *422 the marriage instead of after the marriage would not justify the application in the instant case of a different rule of law from the one applied in that case.
It further appears from the report of that case (page 299) that the wife “applied for alimony in the divorce case, but it was refused by the court.” Also, it is stated on page 305, in the opinion by Day, J.:
“By the divorce, under the provisions of the statute, she lost her right of dower; and, being divorced, she was not the testator’s widow at his decease. Not being entitled to dower, and not being the testator’s widow, she had no right of election, as provided by statute for widows who are entitled to either dower or a provision in a will in lieu of dower * * *. The procuring of a divorce by the testator does not necessarily imply a revocation of the will, for it is entirely consistent with an intent to annul her right of dower only, and her consequent right of election, thus leaving her to take under the absolute and unconditional provisions of the will.”
From the foregoing it is apparent that, although there was no agreement with respect to the property rights of the parties, the husband did seek to eliminate any rights of the wife in his estate, and did so successfully when he secured a decree of divorce which denied the wife’s claim to alimony, cut off her dower rights, and eliminated any right she would have had to take against his will. The effect of that decree was exactly the same as though it had incorporated a property settlement between the husband and the wife. It certainly eliminated any rights of the wife in the property of the husband. It was a decree which he sought and secured successfully to effect that purpose. It had the same effect as any agreement he might have entered into to effect that purpose either partially or wholly. The Charlton case did not, as the majority opinion states, involve “the mere granting of a divorce to the *423 husband” but it involved the granting of a divorce to the husband and a decree which definitely and finally settled the rights of the wife in any property of the husband, just as effectively as the decree in the instant case did when it confirmed the amicable division of their properties between the husband and wife.
To the extent that the quotation in the majority opinion from Ohio Jurisprudence states that “a divorce * * * coupled with a full settlement of property rights” involves “an-implied revocation of a prior will,” such statement appears to be clearly inconsistent with the decision in Charlton v. Miller, supra. The 1953 Cumulative Supplement to volume 41 of Ohio Jurisprudence refers to Codner v. Caldwell, supra, as holding “contra” to that statement. Although that statement is supported by two decisions of Courts of Appeals of this state, it is apparent that the statement quoted from Ohio Jurisprudence can have no more ■weight than the authorities which support it. Certainly a Court of Appeals decision cannot overrule a decision of this court.
The majority opinion has not considered the effect of Sections 10504-51 and 10504-52, General Code.
Section 10504-51, General Code, reads:
“A conveyance, settlement, deed, or other act of the testator, by which his estate or interest in property previously devised or bequeathed by him, is altered, but not wholly divested, shall not be deemed a revocation of the devise or bequest of such property, but such devise or bequest shall pass to the devisee or legatee, the actual estate or interest of the testator, which would otherwise^descend to his heirs, or pass to his next of kin; unless, in the instrument by which such alteration is made, the intention is declared, that it shall operate as a revocation of such previous devise or bequest.”
Section 10504-52, General Code, reads:
*424 “But if the provisions of the instrument by which such alteration is made, are wholly inconsistent with the terms and nature of the previous devise or bequest, such instrument will operate as a revocation thereof, unless the provisions depend on a condition or contingency, and such condition be not performed, or contingency does not happen.”
The property settlement in the instant case is obviously, to use the words of Section 10504-51, General Code, a “settlement * * * or other act of the testator, by which his estate or interest in property previously devised or bequeathed by him, is altered, but not wholly divested.” The statute states that such a settlement “shall not be deemed a revocation of the devise or bequest * * * unless, in the instrument by which such alteration is made, the intention is declared, that it shall operate as a revocationThere is no such declaration in any instrument relating to the property settlement here involved. Likewise, to use the language of Section 10504-52, General Code, there is nothing in any such instrument “wholly inconsistent with the terms and nature of the previous devise or bequest.” Certainly, if the husband had executed the same will after the divorce and property settlement it would be given effect. There would be nothing inconsistent with the property settlement made and a will of the husband leaving all his property to his former wife. See Charlton v. Miller, supra, 305. The instant case is not like a case where the maker of a will subsequently executes an instrument such as a specifically enforcible contract to make a will disposing of all his property to someone else.
The majority opinion states “that the General Assembly * * * expressly recognized the soundness of the rule [that a will executed during marriage is revoked by a divorce decree including a settlement of property *425 rights] by the enactment of Section 10504-47, General Code.”
That section reads:
“A will shall be revoked by the testator tearing, canceling, obliterating or destroying it with the intention of revoking it, by the testator himself, or by some person in his presence, or by his express written direction, or by some other will or codicil, in writing, executed as prescribed by this title, or by some other writing, signed, attested and subscribed, in the manner provided by this title for the making of a will, but nothing herein contained shall prevent the revocation implied by lato, from subsequent changes in the condition or circumstances of the testator.” (Italics supplied.)
The italicized portion of the foregoing quotation is what the majority opinion refers to as expressly recognizing the soundness of “the rule” which it has applied in the instant case.
The substantial equivalent of the provisions of Section 10504-47, General Code, first appeared in the statutory law of this state as a part of Section 41 of an Act Relating to Wills, enacted in 1840 (38 Ohio Laws, 125). Prior to that, the corresponding section of the statutes relating to wills was section 5 of an act enacted in 1831 (29 Ohio Laws, 242). In the 1831 act, the italicized portion of the foregoing quotation of Section 10504-47, General Code, read:
“* * * or when the testator or testatrix had no children at the time of executing such will, but shall afterwards have a child, and in either case, such last will or codicil shall be void.”
When this statutory history is considered in the light of the common law as it was understood in 1840, the meaning of the italicized portion of Section 10504-47, General Code, is apparent.
Under the common law as understood at that time, where a man married and had a child, there was an *426 implied revocation of a will made prior to his marriage. Section 5 of the act of 1831 provided for this contingency without requiring, as the common law had, a marriage and the birth of a first child. Only the birth of the child was required. Section 40 of the act of 1840 contained a similar provision which remained in the statutory law of this state until 1932, as hereinafter pointed out. Likewise, where a woman married, there was an implied revocation of her will. With respect to this, the act of 1831 had been silent. However, in section 39 of the act of 1840, it was provided that there should not be a revocation of the will in such an instance, and similar provisions still remain in the statutes of this state. See Section 10504-53, General Code. Furthermore, where a will provided for a devise of land and the maker of the will later disposed of that land, the will was impliedly revoked so far as it related to such land, even though the maker of the will reacquired and owned the land at the time -of his death. ■ As to this, the act of 1831 had been silent. However, provisions against a revocation in such and most similar instances, were specifically set forth in sections 35 to 38, inclusive, of the act of 1840, and similar provisions still remain in the statutes of this state. See Sections 10504-48, 10504-50, 10504-51 and 10504-52, General Code. These were the only three instances in which the common law at that time recognized an implied revocation of a will by reason of “changes in the condition or circumstances of the” maker of the will. 40 Michigan Law Review, 406; 1 Page on Wills (Lifetime Ed.), 900, Section 487.
The portion of section 5 of the act of 1831, which provided for revocation of a will on the subsequent birth of an eldest child, became section 40 of the act of 1840 and remained in the statutory law of this state until the enactment of the Probate Code of 1932. At that time, the specific provision for the revocation of *427 a will in the event of such a subsequent change in the condition or circumstances of the maker of the will was dropped from the statutes of this state, which thereafter in effect provided that a subsequently born eldest child of the maker of a will should take, as any other afterborn or so-called pretermitted child, the same share of the estate of the maker of the will as he would have taken if such maker had died intestate.- See Section 10504-49, General Code.
By the use and continued re-use of the italicized portions of what is now Section 10504-47, General Code, it is obvious that the General Assembly must have intended to confine the words “revocation implied by law, from subsequent changes in the condition or circumstances of the testator” either (1) to such revocations as provided by statute and to instances provided by statute having the effect of a complete or partial revocation or (2) to such revocations as had theretofore been recognized at common law.
It is obvious that in neither instance can the facts of the instant case justify any conclusion of a revocation implied by law.
A consideration of the act of 1840 relating to wills and of the subsequent enactments of the General Assembly on that subject makes it clear that, by the words “revocation implied by law, from subsequent changes in the condition or circumstances of the testator,” the General Assembly was referring to those instances provided for by other sections of the act of 1840 and of subsequent enactments, which provided for revocations or for consequences having the effect of complete or partial revocations where there were certain “subsequent changes in the condition or circumstances of the testator.” It could not have intended to provide for nonstatutory implied revocations. With respect to two of the three instances of such implied revocations, which were the only three *428 recognized by the common law at that time, the General Assembly provided in sections 35 (now Section 10504-48, General Code), 36 (now Section 10504-50, General Code), 37 (now Section 10504-51, General Code), 38 (now Section 10504-52, General Code), and 39 (now Section 10504-53, General Code) that there should be no revocation in such instances. With respect to the third instance, i. e.} marriage and birth of a child, it eliminated by section 40 of that act the requirement of marriage. In 1932, it eliminated that third instance as a complete revocation. See Section 10504-49, General Code. In addition, it provided by section 43 of the act of 1840 (now in Section 10504-49, General Code) for two other instances which, although not referred to as revocations, had the effect of revocations. Still other such instances have subsequently been provided for by statute. See for example Sections 10504-49 and 10503-17, General Code.
For at least 123 years, the policy of this state as determined by the General Assembly has been to prescribe specifically by statute the steps which one must take to avail himself of the privilege of disposing of his property by will. The General Assembly has recognized that the lips of a decedent are sealed and, because of this, has prescribed formalities which must be followed. These have been prescribed to avoid the uncertainty which would be involved in giving effect to any supposed intention of a decedent with regard to the disposition of his property. No effect is ordinarily given to his intention in that regard where it has not been expressed in accordance with the requirements of the statutes relating to wills.
The facts of the instant case furnish a good example of the wisdom of that policy. These parties lived together as husband and wife for over 40 years and they had two children. The will involved was executed only five months before the wife instituted suit for alimony *429 and about one arid one-half years before the divorce. The will was found in the safe deposit box of the husband at his death over 12 years after the divorce and property settlement. At the time of the divorce and property settlement, the husband was represented by able counsel. Is it reasonable to infer that counsel did not inquire about any existing will, and, if he did inquire, did not then advise the husband to revoke the will if he did not want his wife to take under it? Is it not reasonable to assume that the husband, notwithstanding the divorce and property settlement, intended that his wife of over 40 years and the mother of his children should take on his death what he would no longer need and what he had provided for her in his will? Notwithstanding the divorce and property settlement, it is not unlikely that he still had a continuing interest in the welfare of his former wife. If he did not intend her to take under his will, he could very easily have revoked it. He did not. Why should this court do it for him on the doubtful assumption that he would have wanted it that way?
As stated in a portion of the opinion of Hertrais v. Moore, 325 Mass., 57, 88 N. E., (2d), 909, which is quoted in the opinion in Codner v. Caldwell, supra:
“It would be a serious matter to invalidate a will because of a supposed change in intention on the part of a testator not given formal expression by him * * *. If the changes relied upon by the respondents were held to achieve a revocation implied in law, other changes can be imagined which with equal plausibility might be urged to have similar effect. Persons who have drawn wills or who are to draw wills are not now to be exposed to the risk that, in the present circumstances and perhaps others, the courts might decree revocation notwithstanding that such persons do not avail themselves of the easy means afforded by statute for accomplishing revocation by their own intentional acts.”