Sutton, Appellee, *v.* Bethell, Appellant, et al.

(No. 7745—Decided June 22, 1953.)

*Mr. Julius R. Samuels* and *Mr. David Johnson,* for appellee.

*Mr. Andrew O. Haefner* and *Mr. Paul J. Hengge,* for appellant.

Matthews, P. J. This is an action contesting the validity of a certain paper writing as the last will of Amy Gertrude Bethell, deceased. An issue was formulated by the court, a trial had, and at the conclusion of the evidence the court sustained the contestant's motion for a verdict declaring the paper writing not to be the last will of Amy Gertrude Bethell, for the reason that it had been in fact and in law revoked by a separation agreement entered into in her lifetime with her husband when they were divorced. A judgment was entered on this verdict.

The evidence shows that Amy Gertrude Bethell and William James Bethell were married in the year 1929. On January 18, 1943, she made a will in which she named her husband, William James Bethell, as sole beneficiary and executor without bond. In 1951, her husband instituted an action for divorce against her, and, on March 28, 1951, while the divorce action was pending, they entered into a separation agreement.

On May 7, 1951, William James Bethell was granted
a divorce and in the divorce decree the separation
agreement was referred to, attached thereto, and made
a part thereof.  By this separation agreement, William
James Bethell transferred all his interest in the house-
hold furniture and certain described real estate to
Amy Gertrude Bethell and agreed to pay her $10 per
week during the pendency of the divorce action.
Nothing was transferred or surrendered by Amy
Gertrude Bethell to William James Bethell.  Follow-
ing the transfer by William James Bethell, the separa-
tion agreement contained these provisions:

"Now, therefore, in consideration of the premises,
each party hereto does hereby release and discharge
the other from all obligations of support, except as
hereinbefore mentioned, and from all other claims,
rights and duties arising or growing out of said
marital relation; and said parties mutually agree that
each party hereto may freely sell or otherwise dispose
of his or her own property by gift, deed, or last will
and testament, and each party is by these presents
hereby barred from any and all rights or claims by
way of dower, inheritance, descent, distribution, al-
lowance for twelve (12) months' support, right to re-
main in the mansion house, and all rights or claims as
widow, widower, heirs, distributee, survivor, or next
of kin, and all other rights or claims whatsoever, in or
to the estate of the other, whether real or personal,
and whether now owned or hereafter to be acquired,
which may, in any manner, arise or accrue by virtue
of said marriage.

"And each party, for the considerations aforesaid,
does hereby release and relinquish to the other, and
to the heirs, executors, administrators, devisees, lega-
tees and assigns of the other, all claims or rights of

dower, inheritance and distributive share, or as widow,
widower, heir, survivor, distributee or next of kin, in
and to all the estate of the other, whether now owned
or hereafter acquired, and all claim or right to an al-
lowance for twelve (12) months' support, or to reside
in the mansion house, and all other rights or claims
whatsoever, which may in any manner arise or accrue
by virtue of said marriage.

"And each party further agrees that the other party
shall have full liberty to dispose of all his or her prop-
erty, real and personal, whether now owned or here-
after acquired, during life, or by last will and testa-
ment, and that upon the death of such party, all of his
or her property, real and personal, which shall not
have been disposed of, during life or by last will and
testament, shall descend to, vest in and be distributed
[to] such person or persons as would be entitled to the
same by the statutes of descent and distribution of the
state of Ohio then in effect, had the surviving party
died during the life of the other party.

"And each party hereby waives any right which he
or she may have, to administer the estate of the other
party, upon the death of such other party."

It will be observed that each of the parties was given
complete liberty to dispose of his or her property dur-
ing life or upon death, entirely free of every possible
claim of the other. It will be noted also that the par-
ties had in mind the disposition of their property by
last will, as is shown by the provision granting to each
the right to do so freely, and, also, that, notwithstand-
ing this, no mention was made of any existing will and,
of course, the agreement left each free to name the
other as beneficiary in any will which he or she might
thereafter make.

It is significant that Amy Gertrude Bethell made no

alteration of her existing will, although she lived eight months and eight days after the separation agreement was entered into.

Testimony of the secretary of one of the attorneys in the case was proffered that Amy Gertrude Bethell, after the separation agreement was made, told her that she had a will and wanted to make certain changes in it. This evidence was excluded. We are of the opinion that the evidence was competent as showing knowledge of the existence of the will and as indicating that the failure to have some provision in the separation agreement on that subject was not an inadvertence. However, the absence of such testimony does not render the writing ambiguous or of doubtful meaning.

Our reading of the separation agreement fails to show any express revocation of this will or any provision so inconsistent with its continued existence as to indicate an intent on the part of Amy Gertrude Bethell to revoke it. We find nothing in the agreement to indicate an intention either way, unless the mere fact that the divorce and the comprehensive agreement as to existing property rights and the granting to each complete freedom of action thereafter had that effect.

Contestant relies on that part of Section 10504-47, General Code, which provides that nothing contained in the enumeration of methods of revoking a will set forth in the section "shall prevent the revocation implied by law, from subsequent changes in the conditions and circumstances of the testator." It is urged that the divorce and separation agreement brought about such a change in the condition and circumstances of Amy Gertrude Bethell as to create a legal implication that she intended thereby to revoke her will.

We are of opinion that both contentions of the con-

testants—that the agreement expressly revoked the will and that it constituted a revocation by implication of law—are completely answered by the case of *Codner* v. *Caldwell, Jr.,* 156 Ohio St., 197, 101 N. E. (2d), 901. An examination of the separation agreement involved in that case shows many points of similarity to the agreement relied on in this case. It is true that differences can be pointed out, but the aggregate of the provisions and surrounding circumstances in the case at bar furnishes a weaker premise than in that case for the conclusion that the situation is so repugnant to the idea of an intent to continue the former spouse as a testamentary beneficiary as to require the conclusion that the intent was to revoke the will.

In *Codner* v. *Caldwell,* the husband was given a substantial part of the property under the terms of the separation agreement, whereas, in the case at bar, he was given nothing. The only transfer of property effected by the separation agreement in this case was from the husband to the wife, and for all that appears in this record the only effect of her will would be to return to him the property that was his before the separation agreement was made.

In both separation agreements, the right of each party to dispose of his or her property by will, without interference by the other, was expressly declared.

In both agreements, both waived every conceivable right based on the marital relation, and as heir, surviving spouse, or in any other capacity.

In this case, the facts show that the parties were married in 1929, and that it was not until 1943 that the will was executed and not until 1951 that the separation agreement was made and after the husband had filed suit for divorce, and that he was granted the divorce. In *Codner* v. *Caldwell,* the parties were mar-

ried in 1938, and the codicil making the husband sole beneficiary was executed prior to the marriage, that is, on November 4, 1937. On June 4, 1948, the wife—not the husband—sued for divorce and was granted the decree. While the divorce case was pending, the separation agreement was entered into.

Both testatrices died without heirs of the body. In *Codner* v. *Caldwell*, the testatrix lived about five months after the separation agreement was entered into without destroying her codicil, or executing a new will. In the case at bar, the testatrix lived more than eight months without destroying her will or making a new will.

In holding that the divorce and separation agreement had not in fact or in law effected a revocation of the codicil, the court, at pages 202 and 203 in *Codner* v. *Caldwell, supra,* quoted with approval from the case of *Hertrais* v. *Moore,* 325 Mass., 57, 88 N. E. (2d), 909, as follows:

" 'The result we attain, which is compelled, we think, by our statutes and our decisions, seems to us to be the desirable one. It would be a serious matter to invalidate a will because of a supposed change in intention on the part of a testator not given formal expression by him. Our conclusion avoids the difficulties faced in those jurisdictions where the statutes permit the adoption of a contrary view, where the revocation is not presumptive but absolute, and evidence, not amounting to a republication, cannot be received of a testator's actual intent to continue his will in force, and where the prevailing standard seems to be what a reasonable testator would be deemed to have intended. * * * If the changes relied upon by the respondents were held to achieve a revocation implied in law, other changes can be imagined which with equal plausibility

might be urged to have similar effect. Persons who have drawn wills or who are to draw wills are not now to be exposed to the risk that, in the present circumstances and perhaps others, the courts might decree revocation notwithstanding that such persons do not avail themselves of the easy means afforded by statute for accomplishing revocation by their own intentional acts.' "

One of the assignments of error was that for revocation by divorce and separation to be available, it was necessary that it be specially pleaded. We are of the opinion that this is without merit. Under the issue of whether the paper writing is the last will of the decedent, any fact nullifying the paper writing as the will is available to the contestant. Under this issue, fraud, undue influence, lack of proper execution, and revocation may be asserted.

For these reasons, the judgment is reversed, and the cause is remanded for further proceedings according to law.

*Judgment reversed.*

Ross and HILDEBRANT, JJ., concur.