OPINION
Plaintiff-appellant Karen Wallace [hereinafter appellant] appeals the August 23, 2000, Judgment Entry of the Domestic Relations Division of the Licking County Court of Common Pleas. Defendant-appellee is Randy Taylor [hereinafter appellee].
 STATEMENT OF THE FACTS AND CASE
Appellant and appellee are the parents of Shania Taylor, d.o.b. June 6, 1996. Upon the establishment of paternity, appellant was named the child's residential parent by Judgment Entry filed February 11, 1997. Appellee was granted visitation at that time and ordered to pay child support.
On June 29, 1998, appellant filed a motion which requested that appellee be found in contempt for his failure to abide by the visitation schedule. The Motion for Contempt requested modifications to the visitation schedule and procedure, as well as a modification of child support. The matter was sent to mediation. Thereafter, on November 16, 1998, an Agreed Judgment Entry was filed and approved by the trial court. The Agreed Judgment Entry modified the existing allocation of parental rights and responsibilities by providing detailed parameters for the conduct of the parties. The parties agreed to cooperate with each other. Visitation schedules were made more specific. Procedures regarding the transfer of the child from one house to the other and specific guidelines for babysitting, discipline and medical care were also set forth.
On July 8, 1998, the child's paternal grandparents, Janet and Joe Taylor, filed a motion to be joined as Third Party Defendants for the purpose of seeking grandparent visitation rights. On July 8, 1998, the trial court granted the Taylors' Motion to be Named Third Party Defendants. On October 29, 1998, by Agreed Judgment Entry, the Third Party Defendants were granted visitation privileges with the child.
On May 27, 1999, appellee filed a Motion to Modify Residential Parent Status. Thereafter, on September 23, 1999, appellant filed a Motion to Modify Child Support. A hearing on both of these motions was held on October 6, 1999, before a Magistrate.
The Magistrate issued a Decision on February 9, 2000. The Magistrate recommended that appellee be named the residential parent, finding that there had been a change of circumstance and that the change of residential parent was in the child's best interest. Because the Magistrate recommended that appellee be named the residential parent, the Magistrate recommended that appellant's Motion to Modify Child Support be found to be moot.
Appellant filed timely Objections to the Magistrate's Decision.[1] On August 3, 2000, the trial court filed an Opinion in which it overruled each of appellant's Objections. Thereafter, on August 23, 2000, the trial court issued a Judgment Entry in which it overruled appellant's Objections, named appellee as the residential parent of the child, and granted appellant visitation. Further, the trial court ordered appellant to pay child support.
It is from the trial court's August 23, 2000, Judgment Entry that appellant prosecutes this appeal, raising the following assignments of error:
ASSIGNMENT OF ERROR I
 THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT THERE WAS A CHANGE IN THE CIRCUMSTANCE WITH RESPECT TO THE CHILD AND HER MOTHER. THE COURT COMMITTED REVERSIBLE ERROR BY FIRST ALLOWING, AND THEN RELYING ON, TESTIMONY OF EVENTS WHICH OCCURRED AND WERE KNOWN PRIOR TO THE LAST DECREE OF THE COURT.
 ASSIGNMENT OF ERROR II
 THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR WHEN IT GRANTED APPELLEE FATHER'S MOTION FOR CHANGE IN RESIDENTIAL PARENT STATUS, WITHOUT FIRST BALANCING THE INHERENT HARM OF A CHANGE IN ENVIRONMENT AGAINST THE ALLEGED ADVANTAGES OF SUCH A CHANGE AS MANDATED BY R.C. [SECTION] 3109.04.
 ASSIGNMENT OF ERROR III
 THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND THAT A CHANGE IN ENVIRONMENT WOULD SERVE THE BEST INTERESTS OF THE CHILD. SUCH FINDING WAS UNREASONABLE, UNCONSCIONABLE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 ASSIGNMENT OF ERROR IV
 THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO HEAR ADDITIONAL EVIDENCE REGARDING THE CHILD'S HEALTH AND THE POTENTIAL HARM CAUSED BY CHANGING THE CHILD'S RESIDENTIAL ENVIRONMENT.
 ASSIGNMENT OF ERROR V
 THE TRIAL COURT ABUSED ITS DISCRETION IN CALCULATING APPELLEE FATHER'S INCOME FOR PURPOSES OF CHILD SUPPORT CALCULATIONS.
 I
In the first assignment of error, appellant contends that the trial court committed reversible error when, in determining whether there had been a "change of circumstances" so as to justify modification of the previous decree allocating parental rights and responsibilities, it permitted and then relied upon testimony which occurred prior to the last such decree.[2] We disagree.
Revised Code 3109.04(E)(1)(a) sets forth the standard to be applied by a trial court in determining whether there has been a change of circumstances to warrant a modification of a decree allocating parental rights and responsibilities and when the trial court may change the child's residential parent:
 The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
. . .
 (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
Appellant argues that the trial court committed reversible error when it admitted and relied upon evidence of events which occurred prior to the 1998 Agreed Judgment Entry in determining that there had been a change of circumstances. In this case, appellant claims the trial court should not have permitted testimony regarding events from February, 1997, the date of the original decree naming appellant as residential parent, through November, 1998, the date of what appellant alleges is the "prior decree". We disagree.
In making a determination of whether a change of circumstances has occurred, a trial court is limited to "facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree." R.C. 3109.04(E)(1)(a). The trial court, in addressing appellant's objection on this issue, made the following findings:
 The Magistrate permitted testimony relating to events back to February, 1997. On February 11, 1997, the parties agreed to an entry which incorporated a settlement reached in the matter that included the designation of residential parent and defendant's visitation.
 Another hearing was concluded in April, 1997, in which the plaintiff [appellant] asked for a determination of visitation for the defendant [appellee]. This was refused since the parties had entered an agreement concerning the issue of visitation in February of that year.
 On November 16, 1998, the parties presented an agreed judgment entry. While that entry recited various intentions, there was nothing in the entry that served as a factual basis that caused the various agreements reached in that entry.
 As the Magistrate noted, Ohio Revised Code 3109.04(E)(1)(a) requires a twofold test in order to modify a prior decree allocating parental rights and responsibilities for the care of children. One is that the change of circumstances has occurred since the prior decree or the factual basis for the change of circumstances was known to the Court at the time of the last decree.
 While the last order entered was November 16, 1998, the entry encompassed the results of the mediation effort of the parties. The entry contains no factual basis that led the parties to seek mediation. Therefore the Magistrate was correct in finding that the Court was unaware of the facts or incidents that may have caused the resultant November 16, 1998, entry and it was appropriate to allow testimony of those instances in 1997 and early 1998 to be included in the overall evidence.
We find that the trial court did not commit reversible error. First, we note that the trial court found that the 1998 Agreed Judgment Entry was the "prior decree" pursuant to R.C. 3109.04(E)(1)(a). Neither party appeals this finding. It is not clear that the Agreed Judgment Entry, based upon what amounted to a motion for contempt against the non-residential parent regarding visitation issues, is the type of "prior decree" contemplated in R.C. 3109.04(E)(1)(a)[3]. However, this issue is not before us. Therefore, for the purposes of this appeal, we will accept the trial court's finding that the 1998 Agreed Judgment Entry was the "prior decree."
Next, the trial court found that the facts arising between the original order designating a residential parent and the November, 1998 Agreed Judgment Entry were not previously known to the trial court. The record supports the trial court's finding. Nothing in the record supports appellant's arguments that the facts regarding whether a change of circumstances had occurred were known to the trial court. As the trial court noted, the November, 1998 Agreed Judgment Entry provides no factual basis for the Agreement. Further, the record contains no mediation report or other record of hearings in which the challenged facts were presented to the trial court. Therefore, we find that the trial court did not commit reversible error when it found that the challenged facts were not before the trial court and relied upon those facts in determining whether a "change of circumstances" occurred.
Appellant has alleged that it was an abuse of discretion for the trial court to permit the challenged evidence to be admitted. The admission or exclusion of evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of syllabus; State v. Finnerty (1989), 45 Ohio St.3d 104, 107. Absent an abuse of discretion, a ruling will not be disturbed upon appeal. An abuse of discretion connotes more than a mere error in law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. It implies an arbitrary, unreasonable or unconscionable attitude on the part of the trial court. Id. Because we find that it was not error nor an abuse of discretion for the trial court to rely upon the challenged evidence, we must also find that it was not an abuse of discretion for the trial court to admit that evidence.
Appellant's first assignment of error, in relevant part, is overruled.
 II
In the second assignment of error, appellant argues that the trial court abused its discretion and committed reversible error when, in changing the child's residential parent, it failed to balance the harm of a change of the child's environment against the advantages of a change of environment. We disagree.
Revised Code Section 3109.04(E)(1)(a) states, in pertinent part:
 In applying the standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
. . .
 (iii) the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
First, we note that the trial court correctly cited the applicable law in its Judgment Entry. Further, we find that while the trial court failed to make a finding which explicitly recited the language of R.C.3109.04(E)(1)(a)(iii), the trial court adequately addressed the issue. After setting forth factual findings regarding appellant's "antics during exchanges of the child," "uncontrollable rages", a lack of consideration to what effect her behavior had on the child, and generally disruptive behavior, the trial court, in overruling appellant's objection to the Magistrate's Decision, made the following finding:
 The harm she [appellant] is exposing to the child is far more serious than any harm likely to be caused by a change in the residential parent status.
Opinion (addressing Objections), filed Aug. 3, 2000.
The trial court was well aware of its duty to balance the harm likely to be caused by a change of environment to the advantages of the change of environment to the child. This is evident not only in the trial court's recitation of the statute, but also in the trial court's recitation of its factual findings regarding the child's best interest followed by its finding that the harm appellant is exposing the child to is far more serious than any harm likely to be caused by a change of residential parent. The trial court's findings indicate the trial court compared the parental behavior of both parties and considered both the advantages of the change as well as the disadvantages of the change. Implicit in the court's findings is a conclusion that the harm of changing the environment of the child is outweighed by the advantages of changing the environment of the child.
Appellant's second assignment of error is overruled.
 III
In essence, appellant argues that the trial court's decision to change the child's residential parent from appellant to appellee was an abuse of discretion and against the manifest weight of the evidence. Specifically, in the first assignment of error, appellant argues that the trial court's finding that a "change of circumstances" occurred so as to justify a modification of the allocation of parental rights and responsibilities was an abuse of discretion. Appellant, in her third assignment of error, argues that the trial court's finding that a change in environment would serve the best interests of the child was an abuse of discretion and against the manifest weight of the evidence. We will address these issues together.
In determining custody matters, the trial court has broad discretion.Miller v. Miller (1988), 37 Ohio St.3d 71, 74. Therefore, we will not reverse a trial court's decision concerning a custody matter absent an abuse of discretion. An abuse of discretion connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Co. v. FoleyConstruction Co. (1978), 54 Ohio St.2d 279; Holm v. Smilowitz (1992),83 Ohio App.3d 757 (citing Vogel v. Wells (1991), 57 Ohio St.3d 91, 96).
As stated previously, R.C. 3109.04(E)(1)(a) provides as follows, in relevant part:
 The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies: . . .
 (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
R.C. 3109.04(F)(1) sets forth factors governing the allocation of parental rights and responsibilities. Such section provides as follows:
 (F)(1) In determining the best interest of a child pursuant to this section, . . . the court shall consider all relevant factors, including, but not limited to: (a) The wishes of the child's parents regarding his care; (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court; (c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest; (d) The child's adjustment to his home, school, and community; (e) The mental and physical health of all persons involved in the situation; (f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court; (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor; (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense . . . (I) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court; (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
The record reflects that appellant has engaged in acts of violence toward appellee and his family during exchanges. Appellant punched appellee's wife in the face while the child was present. TR 12-13, 131-133. Appellant grabbed the third party defendant Janet Taylor (the child's paternal grandmother) by her collar "to get her attention" while Ms. Taylor was holding the child. TR 15, 77, 108, 210. Appellee's father (the child's paternal grandfather) testified that appellant attempted to run him off of the road, TR 109-110. Testimony showed that each of these acts occurred in the presence of the child and that the acts of aggression were escalating. Appellant admitted that she threatened to blow appellee's head off and wait her time out in prison. TR 11, 53.
Appellant has directed aggression towards the child by taking toys given to the child by appellee or his family from the child and tossing them into the yard and by "yanking" a hat from the child's head and tossing it into the mud, punctuating her actions with foul language. (TR 125-126 205). On one occasion, appellant snatched clothes from the child's hands, also given to the child by appellee and his family, and screamed in front of the child "them's not her fucking clothes", while throwing them on the roof of her home. TR 29, 86.
Further, evidence showed that appellant was neglecting the child's hygiene and well being. Testimony was presented that appellant sent the child on visitations with appellee with only the clothes on her back. The child's clothes were dirty and too small. TR 81, 118, 122, 124. The child's shoes were too small and her feet were macerated and peeling. TR 82 119. Appellee and his family purchased new shoes and clothing for the child but were distraught to hear that the clothing had been thrown away (TR 96) and disturbed as they watched appellant toss the clothing they had purchased into the mud (TR 97) or onto the roof of the home (TR 29, 86).
The child was not clean when sent on visitations. Testimony showed that the child's hair smelled and that she had blackheads in her ears and "crusty dirt" behind her ears. TR 87-88. Appellee and his family have had to use baby oil to remove the dirt from the child's ears. Appellant had sent the child on visitation in urine soaked diapers or a diaper with dried bowel movements. TR 87. This caused the child to have severe diaper rash and a possible urinary tract infection. TR 87, 116.
Appellee and his family, the Third Party Defendants, have been denied visitation on multiple occasions. TR 26, 55, 81. This problem was exacerbated by appellant's refusal to allow the child to be transported by anyone but the appellee. TR 80. Therefore, appellee has missed several hours of visitation due to circumstances which prevented him from picking the child up himself. TR 55, 81.
Testimony showed that the child and appellee have a good relationship. TR 89-90. Further, appellee's wife and stepchildren get along well with the child. TR 26-27, 89.
In conclusion, we find that there was sufficient evidence to demonstrate that the trial court did not abuse its discretion in finding that a change of circumstances occurred, that a change of residential parent was in the child's best interests and that the advantages of changing the child's home environment outweighed any harm of such a change. Further, we find that the trial court's findings were supported by sufficient, competent, credible evidence and are not against the manifest weight of the evidence.
Appellant's third assignment of error and first assignment of error, in relevant part, are overruled.
 IV
In her fourth assignment of error, appellant argues that the trial court abused its discretion by failing to hear additional evidence regarding the child's health and potential harm that could be caused by changing the child's residential environment. We disagree.
Civil Rule 53(E)(4)(b) states, in relevant part:
 [Upon the timely filing of written objections to a Magistrate's Decision,] [t]he court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter. The court may refuse to consider additional evidence proffered upon objections unless the objecting party demonstrates that with reasonable diligence the party could not have produced that evidence for the magistrate's consideration.
The use of the word "may" in the statute indicates the court has discretion to decide whether to hear additional evidence after the parties submit objections to the referee's report. Normandy Place Assoc.v. Beyer (1982), 2 Ohio St.3d 102, 105. When deciding whether the court below abused its discretion by failing to hear additional evidence, we must bear in mind judicial interpretations of the term "abuse of discretion." As this court has held many times, an abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. See, e.g., Blakemore, 5 Ohio St.3d 217, 219.
Therefore, we must not reverse the judgment below unless we find the court's decision not to hear additional evidence implies an unreasonable, arbitrary, or unconscionable attitude on the part of the court. Further, when applying the abuse of discretion standard, a reviewing court is not free to substitute its judgment for that of the trial court. In re Jane Doe 1 (1991), 57 Ohio St.3d 135; Berk v.Matthews (1990), 53 Ohio St.3d 161; and Buckles v. Buckles (1988),46 Ohio App.3d 102.
In addressing appellant's Objection regarding the additional evidence appellant sought to present, the trial court found that "[t]hese should have been posed before the hearing." We understand the trial court to be stating that this evidence should have been presented before the Magistrate, at the hearing. Appellant asserts on appeal that she provided the trial court with a "legitimate reason" for her failure to present this evidence at the hearing before the Magistrate:
 Plaintiff was unable to afford the fee associated with expert witnesses. Plaintiff's counsel has agreed to defray the cost associated with these requests by reducing her legal fees and agreeing to accept monthly payments on her legal fees." Appellant — [Plaintiff's] Objections to the Magistrate's Decision.
We agree with the implication of the trial court's finding, i.e. that appellant has not demonstrated that despite due diligence, the information could not have been presented at the hearing before the Magistrate. Therefore, pursuant to Civ.R. 53(E)(4)(b), we find that the trial court did not abuse its discretion in failing to hear additional evidence regarding the child's health or the impact of the change of the child's environment.
Appellant's fourth assignment of error is overruled.
 V
In the fifth assignment of error, appellant argues that the trial court abused its discretion in calculating appellee's income for the purpose of child support and/or the calculation of child support was against the manifest weight of the evidence.[4] We disagree.
A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279.
Appellant presented testimony that appellee was self-employed, owning and operating a trucking business. Appellee testified that his gross income for 1997 and 1998 was $266,657 and $265,773, respectively. TR 49-50. However, appellee further testified that he took home $450 per week as what appellee considered to be income. TR 50 57. No additional evidence was solicited as to appellee's business expenses or net income. Therefore, the trial court found appellee's income to be $23,400 ($450 times 52 weeks).
We find that the trial court's findings were supported by sufficient, competent evidence. The evidence was solicited in response to a motion by appellant to increase child support, presuming she would retain her status as residential parent. Appellee testified as to his income from the business, i.e. $450 per week. It is evident from the transcript of the proceedings that appellant had possession of appellee's 1997 and 1998 tax returns and yet failed to elicit any testimony regarding appellee's business expenses or net income. Appellant had every opportunity to address these figures at the hearing and failed to do so. Appellant presented no testimony to rebut appellee's testimony as to his "take home" income and did not admit the tax returns into evidence for the trial court's review. The trial court was free to determine whether it found appellee's testimony credible. We find that the calculation of appellee's income was not against the manifest weight of the evidence.
Appellant's fifth and final assignment of error is overruled.
The judgment of the Licking County Court of Common Pleas is affirmed.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is affirmed. Costs to appellant.
 ___________ Edwards, J.
Gwin, P.J. and Farmer, J. concurs.
[1] Plaintiff's Objections to the Magistrate's Decision were filed February 18, 2000.
[2] Further, appellant alleges that the trial court's determination that there had been a change of circumstances was an abuse of discretion. However, this argument will be considered in conjunction with Assignment of Error III.
[3] Historically, courts have looked to the prior decree which granted the then existing award of "custody". See Bachtel v. Bachtel (1954),97 Ohio App. 52 (disapproved on other grounds, Volz v. Volz (1957)167 Ohio St. 141)1; White v. White (1945), 77 Ohio App. 447, Rauth v.Rauth (1943), 73 Ohio App. 564. In this case, only the February 11, 1997, Judgment dealt directly with the naming of a residential parent. Obviously, appellant's Motion which presumably lead to the November, 1998, Agreed Judgment Entry did not involve allegations that appellant should no longer remain as residential parent. At that point in time, appellant's status as residential parent had not been put at issue before the trial court.
[4] While appellant's assignment of error alleges that the trial court's calculation of appellee's income was an abuse of discretion, the argument of the assignment of error argues that there was insufficient evidence to support the figure arrived at by the trial court.